No. 52.—WILLIAM C. ALLEN and others, plaintiffs in error, *vs.* JOSEPH DONALDSON, administrator of Hiram C. Allen, deceased, defendant in error.

[1.] When there are two sets of children, born of the same mother, the one legitimate and the other illegitimate, and one of the latter dies intestate and without issue, the legitimate brothers and sisters on the maternal side, are not by the Statutes of this State, co-distributees of the estate of the deceased, with the illegitimates.

In Equity, in Cherokee Superior Court. Decision on demurrer, by Judge ERWIN. April Term, 1852.

The complainants in this bill, were the half-brothers and sisters, by the mother, of the intestate of the defendant. The intestate was an illegitimate child. The complainants were

legitimate children.   There were in existence two other illegitimate children of the same mother.   The only question made by the demurrer, was whether the legitimate children, under the Statutes of Georgia, were co-distributees of the estate of the deceased illegitimate half-brother.

The Court held that they were not, and this decision is assigned as error.

J. W. H. UNDERWOOD and T. R. R. COBB, for plaintiffs in error.

Jos. E. BROWN and C. PEEPLES, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] There being two sets of children from the same mother, the one legitimate and the other illegitimate, and one of the illegitimates dying without will and without issue, are the legitimate half-brothers and sisters, co-distributees of the estate of the deceased, with the illegitimates ?

Bastards have such rights only as they can *acquire.*   Their incapacity consists principally in this, that they cannot be *heir* to any one ; neither can they have heirs but of their own body. For being *nullius filius,* they are of kin to nobody, and have no ancestors from whom any inheritable blood can be derived. Such is undoubtedly the doctrine of the Common Law.   What then is the *status* of a bastard by the Statutes of this State ?

The first Act upon this subject, is that of 1816 ; for the Act of 1801, of which it is explanatory, does not refer at all to *bastards,* but was passed upon a different subject entirely, namely, to regulate *escheats.*   In construing the word " *heirs,*" in the escheat law, it was held by the Courts, and very properly, that it did not embrace natural born children ; and consequently, that a woman dying without *lawful* heirs, or illegitimates dying without issue, and intestate, the estate in either case escheated.

To prevent this result, the Act of 1816 was passed ; and it is remarkable enough, that the important rights and privileges

which it secures to this numerous class of persons, should have been thus incidentally only enacted in their behalf.

The object of this Statute was two-fold; *first,* to enable bastards to inherit from their mother; and *secondly,* to inherit from one another. They had the capacity to do neither before. But it is contended, and this is the question to be decided in this case, that the Act goes further, and authorizes *lawful* children of the same mother to inherit from their bastard brother. At the same time it is admitted that the converse of this proposition is not true, viz: that the bastard could inherit from the legitimate half-brother or sister. Is this a sound interpretation of the Act of 1816?

Let us analyze this Act. The preamble recites, that "whereas the term *heirs,* contained in the Act of 1801, regulating escheats, has been so construed as to prevent children born of the body of the same mother, from being capable of inheriting or transmitting inheritance; *Be it enacted, &c.* "That where any woman shall die intestate, leaving children commonly called illegitimate or natural born out of wedlock, and no children born in lawful wedlock, all such estate whereof she shall die seized or possessed, whether real or personal, shall descend to and be equally divided among such illegitimate or natural born children and their representatives, in the same manner as if they had been born in wedlock; and if any such illegitimate or natural born child shall die intestate, without leaving any child or children, his or her estate, as well real as personal, shall descend to and be equally divided among his or her brothers and sisters, born of the body of the same mother, and their representatives, in the same manner and under the same regulations and restrictions as if they had been born in lawful wedlock." *Cobb's New Dig.* 293.

Against that construction which claims for the *legitimate* children the right to inherit from the *illegitimate,* under and by virtue of this Act, we would submit that such has not been the understanding of the profession. *Mr. Prince,* himself an eminent lawyer, in his marginal annotation, and in his index to the Digest published in 1837, interprets this Statute as conferring

the privilege upon *bastards* of inheriting from the mother, where she has no legitimate issue, and *from one another* only who die without issue.   *Prince*, 202, 983.   The same construction is put upon the Act by the author of the New Digest, *the counsel who has argued this cause in behalf of the plaintiff in error.*   And so far as we know, this view has been uniformly acquiesced in by the Bench and Bar of the State.

Again, it is a cardinal rule in the interpretation of a Statute, to look to the *subject-matter*.   Words are always to be understood as having a regard thereto.   This is always to be supposed to be in the eye of the legislator, and all his expressions are to be directed to that end.   Now, the Act of 1816, had reference alone to *bastards*.   Under the escheat law, they had been held not to be *heirs*, either to their mother or to one another, and it was to relieve against this disability, in these two particulars, that the Act of 1816 was passed.

Again, the same term or phraseology occurring in the same Statute, is to receive the same interpretation, unless there be something in the Act which renders this construction manifestly improper.   It is insisted that the words, " brothers and sisters, born of the body of the same mother," in the body of the Act, are broad enough to embrace legitimate as well as illegitimate brothers and sisters.   But similar words occur in the context, where they manifestly mean, not children generally, but illegitimate children.   It is recited in the preamble, that the Act of 1801 had been " so construed as to prevent children, born of the body of the same mother, from inheriting or transmitting inheritance."   But no such construction had ever been put upon the Act of 1801, as it respects *lawful* children, born of the body of the same mother.   And this fact reflects great light; indeed, I might say, demonstrates the true construction to be put upon these words in the body of the Act.

But lastly, the words themselves, do not admit of the interpretation contended for.   The latter clause of the Act provides that the estate of an illegitimate dying intestate, and without children, shall descend to and be equally divided among his or

her brothers and sisters born of the body of the same mother, it is true; but it stops not there—but significantly adds, in the same manner as if *they* had been born in lawful wedlock. To whom does this pronoun, *they,* relate? To the deceased illegitimate and his surviving brothers and sisters, of course. And if *legitimates* are included, with what propriety could the language be predicated of them, by the Legislature, as if *they* had been born in wedlock?

Whether we take, therefore, the uniform sense of the profession—the subject-matter—the context, or the words themselves of the Act—they all stand opposed to the right set up in behalf of the plaintiff in error.

But it is argued that the only reason why legitimates cannot inherit from illegitimates, is, that the latter have no inheritable blood, and that so soon as this is infused into their veins by the Legislature, that the only disqualification being removed, which prevents the legitimates from inheriting, that this consequence follows of course without any special provision for that purpose.

We deny the assumption. If a bastard is legitimated to *all* intents and for *all* purposes whatsoever, this would be true; otherwise, the inheritable blood flows just so far as the Statute carries it, and no farther. If this be not so, why did the Legislature in 1829, deem it necessary to pass an Act enabling the *mother* of the bastard to inherit from her natural child, where there were no brothers and sisters on the *maternal* side? By the first clause of the Act of 1816, bastard children are enabled to inherit from their mother, on failure of lawful children ; and yet, in the opinion of the General Assembly, it required the Act of 1829, to enable the mother to inherit from her bastard.

We acknowledge that there is an increasing liberality evinced in modern legislation, in favor of illegitimates. And we rejoice that it is so. This is shown by the Act of 1829, which provides that lands drawn by illegitimates who have been returned as *rphans,* should not be considered as fraudulent, but the same was declared to vest in them. But it does not occur to this Court, that we should be advancing this policy, by holding that egitimates should come in and share the inheritance of an ille-

gitimate, with the co-illegitimates, while the privilege was not reciprocated. We do not understand, in the language of our brother *Peeples*, how legitimates can be of kin to the illegitimates, but the illegitimates, at the same time, not of kin to them. It is counsel and not the Court, who erect the wall between these *uterine* brethren, and maintain that the legitimates may leap over this wall and feed in common on the wild pasturage of the illegitimates—but while they deny to the latter the privilege of returning with them and partaking of their green meadows.

It would be a good law, perhaps, to enable each to inherit from the other, where there were no others occupying the same *status*, in preference to allowing the property to vest, under our Statute of distribution, in distant collateral relations, or to escheat to the State, for want of heirs, capable of inheriting.